NOTE:  This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

―――――――――――――

**CERNER CORPORATION, ATHENAHEALTH, INC.,**
*Appellants*

**v.**

**CLINICOMP INTERNATIONAL, INC.,**
*Appellee*

―――――――――――――

2020-1853

―――――――――――――

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2018-01634, IPR2019-00926.

―――――――――――――

Decided:  April 20, 2021

―――――――――――――

SHARON A. ISRAEL, Shook, Hardy & Bacon, LLP, Houston, TX, for appellant Cerner Corporation.  Also represented by KYLE E. FRIESEN, ROBERT H. RECKERS.

DAVID M. HOFFMAN, Fish & Richardson P.C., Austin, TX, for appellant athenahealth, Inc.  Also represented by CHRISTOPHER ROBERT DILLON, ANDREW PEARSON, Boston, MA.

AMARDEEP LAL THAKUR, Manatt, Phelps & Phillips

LLP, Costa Mesa, CA, for appellee.  Also represented by SHAWN MCDONALD; BRUCE R. ZISSER, Los Angeles, CA.

_____

Before LOURIE, O'MALLEY, and STOLL, *Circuit Judges*.

PER CURIAM.

This is not the first time issues presented on appeal do not mirror directly those presented to the lower tribunal. Such is the case here.  Because we conclude that the claim construction debate on which this appeal initially turns was never presented to the Patent Trial and Appeal Board ("Board") and that the Board had substantial evidence to support its assessment of the prior art disclosure at issue, we affirm the Board's patentability determination.

Cerner Corporation and athenahealth, Inc. (collectively, "Cerner") appeal from a final written decision of the Board holding claims 1–25 of U.S. Patent 6,665,647 (the "'647 patent") patentable.  Those are the determinations we affirm.

BACKGROUND

The '647 patent describes a healthcare management system for healthcare enterprises.  The purpose of the '647 patent is to allow healthcare enterprises to consolidate legacy software applications and new software applications together on one software platform.  Many healthcare enterprises utilize legacy systems for managing data related to a variety of uses, including patient care, accounting, insurance, and administrative functions.  These established systems are often outdated and too inflexible to support healthcare enterprises in the "modern managed care environment."  '647 patent at col. 1 ll. 58–62.  The healthcare management system described in the '647 patent allows healthcare enterprises to preserve existing legacy applications while simultaneously phasing in new or updated applications on the same system.

The enterprise healthcare management system in the '647 patent allows enterprises to "remotely host[] . . . turnkey health care applications" and "provide[s] . . . enterprise users access to the turnkey applications via a public network." *Id.* at col. 2 ll. 61–65. Enterprises can upgrade existing capabilities and add functionality not available in their current system without significant capital investments. Because the applications are hosted on a public network (i.e., the internet), the healthcare enterprise only needs computing resources sufficient to allow secure, quality access to the internet. The "turnkey" management system adjusts to changes within the enterprise as the system "easily and cost-effectively scales" to respond to an enterprise's needs. *Id.* at col. 3 ll. 19–23.

The information collected by the enterprise from its applications may be stored in a searchable database. Specifically, the '647 patent discloses a clinical data repository that stores information from applications within the suite of applications on the system. The clinical data repository stores "multidisciplinary information on a wide variety of enterprise functions." *Id.* at col. 6 ll. 31–40. For example, the clinical data repository stores pharmaceutical, radiology, laboratory, and clinical information data utilized by other applications of the application suite.

The '647 patent discloses that "the clinical data repository is a database that is partitioned" and that "the database portion may be configured as either a logical partition or a physical partition." *Id.* at col. 9 ll. 60–64. The healthcare management system is also capable of supporting multiple enterprises, in which case "the information related to each of the separate healthcare enterprises is stored in a separate partition of the database." *Id.* at col. 10 ll. 6–10. As such, when multiple enterprises are involved with using the system, the clinical data repository may have multiple partitions, with each partition holding healthcare management information for the respective enterprise.

Among other things, the '647 patent describes the partitioning of data for multiple enterprises so as to allow the storing of "[the] first healthcare data in a first portion of the database associated with the first healthcare enterprise facility" and separately storing "[the] second healthcare data in a second portion of the database associated with the second healthcare enterprise facility." *Id.* at col. 14 ll. 24–29. The system allows two (or more) independent healthcare enterprises to share access to certain applications while maintaining sole access to their respective unique healthcare applications. The databases are effectively "partitioned" or "portioned" in this way.

Relevant to this appeal is the "storing" clause in claim 1 of the '647 patent. Claims 2–25 depend from claim 1. Both parties agree that claim 1 of the '647 patent is representative of the claims on appeal. Claim 1, which contains the storing clause, is reproduced below:

1. A method of operating an enterprise healthcare management system for a first healthcare enterprise facility and a second healthcare enterprise facility independent of the first healthcare enterprise facility, comprising:

establishing a first secure communication channel via a public network between an application server and a first end user device in the first enterprise facility and establishing a second secure communication channel via the public network between the application server and a second end user device in the second enterprise facility, the application server remotely hosting a healthcare application and having a database;

receiving first healthcare data from the first end user and second healthcare data from the second end user;

> processing the first healthcare data and the second healthcare data with the healthcare application;
>
> *storing the processed first healthcare data in a first portion of the database associated with the first healthcare enterprise facility and storing the processed second healthcare data in a second portion of the database associated with the second healthcare enterprise facility;*
>
> configuring the database to accept legacy information derived from a legacy application operating at each of the first and second healthcare enterprise facilities, wherein the functions in the healthcare application are not duplicative of the legacy application; and
>
> generating a query to extract information from the database relevant to a respective one of the first and second healthcare enterprise facilities derived from the healthcare data and the legacy information for managing and tracking a performance of the respective one of the first and second healthcare enterprise facilities,
>
> wherein healthcare data in the first portion of the database is only accessible to the first end user device and healthcare data in the second portion of the database is only accessible to the second end user device.

'647 patent claim 1 (emphasis added).

Cerner filed a petition to institute an *inter partes* review of claims 1–25 and 50–55 of the '647 patent. The Board instituted an IPR with respect to all claims. Addressing the claims in reverse order in its Final Written Decision, the Board first found claims 50–55—which were claims to the databases of a single healthcare facility and did not claim partitioning or portioning the databases—unpatentable as obvious in view of various combinations of

prior art references, including a prior art patent to Johnson (U.S. Patent No. 6,915,265 ("Johnson patent"), issued July 5, 2005, filed Oct. 29, 1997). *See* J.A. 87. The Board determined, however, that Cerner failed to show by a preponderance of the evidence that claims 1–5, 10–13, and 15–25—directed to multi-facility databases partially separated into portions—were unpatentable based on those same references. *Id.* The Board also determined that Cerner failed to show by a preponderance of the evidence that claims 6–9 and 14 were unpatentable for similar reasons.

Cerner now appeals the Board's decision related to claims 1–25 of the '647 patent. We have jurisdiction over this appeal under 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. § 141(c).

## DISCUSSION

Cerner's appeal turns on Johnson. Johnson discloses an information system for managing healthcare information. *See* Johnson patent at col. 2 ll. 25–28. Johnson describes a system in which a central host maintains "central databases" along with several applications. *Id.* at col. 10 ll. 27–37. The databases contain information used by medical service providers for administrative purposes such as records of treatment authorization and accounting records with payment history and financial information. One of the "central databases" included in Johnson is the provider service history/payment database. *Id.* at col. 16 ll. 15–16. This database contains information used by medical service providers for administrative purposes. *Id.*

Each of the records stored in the provider service history/payment database is associated with a particular service provider using a "provider ID" that identifies each service provider. *Id.* at col. 26 ll. 44–46. All of the data in the provider service history/payment database from a given service provider is grouped together under that provider's provider ID. *Id.* Service providers have access to

their databases as well as the central databases. In this way the provider service history/payment database is "indexed" using the provider ID. *Id.* at col. 8 ll. 11–14. Cerner's appeal turns on equating the "indexing" by provider ID described in Johnson with the "portioning" of databases disclosed in the '647 patent.

On appeal, Cerner argues that the Board's nonobviousness determination was premised on an improper construction of the term "portion." Cerner contends that, if the term "portion" were construed properly, Johnson's indexing would disclose the storing clause of claim 1. Cerner also argues that Johnson discloses or suggests the storing clause of claim 1, regardless of the construction of the term "portion" and that substantial evidence does not support the Board's conclusion to the contrary. Finally, Cerner asserts that the Board's decision is not supported by sufficient reasoning to be affirmed. We address Cerner's arguments in turn.

I

Cerner first argues that the Board's nonobviousness determination regarding claims 1–25 was premised on an incorrect construction of the term "portion," which appears in the storing clause in claim 1 of the '647 patent. Cerner contends that the Board deviated from the ordinary meaning of "portion" and, by doing so, narrowed the meaning of "portion" to exclude "data groupings created by indexing"— the process disclosed in Johnson. Cerner maintains that Johnson sufficiently discloses the logical or physical separation of data into the distinct "portions" described in the '647 patent.

The problem for Cerner is that it never asked the Board to construe the term "portion" in the storing clause of claim 1 and the Board did not do so. Cerner and Clinicomp asked for a number of terms to be construed and the Board thoroughly analyzed each of the identified claim term.

Instead, the parties and the Board proceeded on the assumption that the terms "partition" as used in the specification and the term "portion" as used in the claim were interchangeable and that they had a common ordinary meaning to one of skill in the art. As the Board described it, the two words were distinct, but it was a "distinction without a substantive difference." J.A. 85. The Board's finding on this point was not persuasively debated below, and with good reason. It is supported both by the plain language of the '647 patent specification and by the testimony of both experts. Quite simply, the Board did not decline to construe any claim term presented to it and did not misunderstand the parties' requests for claim construction.

The '647 patent discloses that "the database *portion* [of the clinical data repository] may be configured as either a logical *partition* or a physical *partition*." '647 patent at col. 9 ll. 62–64 (emphasis added). If the words of the '647 patent are taken in their plain meaning, the '647 patent makes clear that portions of the database are understood as either: (1) logical partitions; or (2) physical partitions. The specification describing the database portion supports the Board's understanding that "portions" of the database described in the '647 patent take form as "partitions" and the terms (i.e., "partition" and "portion") are interchangeable in the context of the '647 patent. '647 patent at col. 9 ll. 60–64. The Board did not err in determining that a portion is a logical or physical separation of data, especially when Petitioners never asked it to conclude otherwise.[1]

Cerner's real dispute is not with the Board's understanding of the term portion, but with the Board's conclusion that Cerner had not directed it to any persuasive disclosure in Johnson that the unique provider IDs in

---

[1]    In fact, Cerner accepted this characterization of the term portion when it first argued that indexing was the same as logical partitioning.

Johnson results in a "logical or physical separation of data." J.A. 84. Cerner is unhappy that the Board found that Johnson does not disclose the "portioning/partitioning" described in the '647 patent.

But the Board had substantial evidence to support its conclusion. The Board properly credited the expert testimony of Dr. Bergeron, a highly qualified expert in the field of medical informatics, who concluded that the portioning described in the '647 patent is a separate function from the indexing disclosed in Johnson. Dr. Bergeron testified that there "is no disclosure that Johnson's database is partitioned into a portion for a first and second healthcare provider." J.A. 82. He further explained that "Johnson's disclosures that the service history/payment database may be indexed by provider ID does not teach or suggest a multi-partition database." *Id.*

Dr. Bergeron's testimony explained that merely identifying data or associating subsets of data with common values (i.e., indexing by provider ID) does not constitute partitioning between distinct healthcare facilities. Relying on Dr. Bergeron's testimony, the Board concluded that it had not been directed to anything in Johnson that supports Cerner's positions that the data indexed under a given unique provider ID is itself "logical[ly] partitioned, or 'portioned,'" from other aspects of the database. J.A. 84.

The Board was persuaded that the indexing in Johnson would do nothing to separate or protect the respective data from outside facilities while still allowing access to the shared applications. As the Board noted "although Johnson discloses that 'a server can store subsets of the central databases' the disclosed purpose is not to create a portion of the database, but simply to allow 'localized sharing of data among service providers operating within a single administrative setting, for example, within a hospital or

clinic, without the delay and additional costs of continual central host accesses.'"[2]  *Id.* at 83–84.

The Board carefully considered the expert testimony of both parties when reaching this conclusion and expressly credited Patent Owner's expert that Johnson fails to disclose storing the data associated with *two healthcare facilities* in *separate portions* of a database.  And, the Board explicitly noted that, "the passage in Johnson on which Dr. Sujansky [(Petitioner's expert)] relies discloses use by different people in a single 'hospital or clinic,'" not separate healthcare facilities.  *Id.* at 84.  Though the provider IDs may keep track of who accesses which application on the database for that single facility, it does not partition the database, either logically or physically.

Having carefully considered the relevant arguments of the parties and the relevant testimony of the parties' experts, and in the absence of evidence that Johnson disclosed the portioning limitation in the storing clause of claim 1, the Board had substantial evidence to support its nonobviousness determination for the claims on appeal.

## CONCLUSION

We have considered the parties' remaining arguments—particularly Cerner's claim that the Board's explanation for its reasoning was lacking—and do not find them persuasive.  For the foregoing reasons, we *affirm* the Board's determination that claims 1–25 of the '647 patent are patentable.

## **AFFIRMED**

---

[2]    As the Board noted, Cerner's contention that claim 1 did not actually require "partitioning" was a belated attempt to move the goalposts— one without evidentiary support.